**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dawn Jett, | No. CV-19-02735-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| County of Maricopa, et al., | |
| Defendant. | |

Plaintiff Dawn Jett is a former employee of Defendant Maricopa County ("the County"). Jett alleges that the County terminated her employment in unlawful retaliation for complaining about perceived Fair Labor Standards Act, Arizona Employment Act, and Arizona Earned Paid Sick Time Law violations to the County's in-house counsel. (Doc. 1.) At issue is the County's motion to strike paragraphs 17 through 28 and part of paragraph 30 from the complaint. (Doc. 11.) The Court denies the motion.

**I. Legal Standards**

Federal Rule of Civil Procedure 12(f) authorizes the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter." "Material that is inadmissible due to privilege may be stricken as immaterial under Rule 12(f)." *Liberty Surplus Ins. Corp. v. Ledesma and Meyer Construction Co., Inc.*, No. CV 12-00900-RGK (SPx), 2012 WL 12896220, at *3 (C.D. Cal. June 19, 2012); *see Ogundele v. Girl Scouts-Arizona Cactus Pine Council, Inc.*, No. CV-10-1013-PHS-GMS, 2011 WL

1770784, at *9 (D. Ariz. May 10, 2011) (striking as immaterial settlement communications inadmissible under Federal Rule of Evidence 408).

Under Arizona law:

> any communication is privileged between an attorney for a . . . governmental entity . . . or other similar entity or an employer and any employee, agent or member of the entity or employer regarding acts or omissions of or information obtained from the employee, agent or member if the communication is either:
>
> 1. For the purpose of providing legal advice to the entity or employer or to the employee, agent or member.
>
> 2. For the purpose of obtaining information in order to provide legal advice to the entity or employer or to the employee, agent or member.

A.R.S. § 12-2334(B). Similarly, under federal common law:

> The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice. The party asserting the attorney-client privilege has the burden of establishing the relationship and privileged nature of the communication. The attorney-client privilege exists where: (1) legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011) (quotations and citations omitted).

**II. Analysis**

Paragraphs 17 and 19-26 fall outside the scope of the attorney-client privilege. These paragraphs allege that Jett had a conference call with the County's in-house counsel during which she reported that she believed her manager was violating federal and state laws related to wage and leave policies. Nothing in these allegations indicates that Jett reported this information for the purpose of soliciting legal advice. Instead, Jett was whistleblowing on what she perceived to be violations of the law, an act for which she claims she was later terminated. "[C]ommunications that trigger retaliatory conduct are

excepted from the privilege." *Biggs v. City of St. Paul*, Nos. 6:18-cv-506-MK; 6:18-cv-507-MK, 2019 WL 1114868, at *2 (D. Or. Mar. 8, 2019) (citation omitted). Indeed, retaliation cases such as these are distinguishable from cases involving the disclosure of confidential communications between an entity client and counsel to a third-party litigant. Jett was a party to her communications while working as a County employee, and she alleges retaliation based on information she provided to the County's in-house counsel. *See Becker v. Williamette Cmty. Bank*, No. 6:12-cv-01427-TC, 2013 WL 2178122, at *2 (D. Or. May 16, 2013).

In a sufficiently analogous context, the Ninth Circuit permitted former in-house counsel to pursue whistleblower retaliation claims against their corporate employer based on their alleged disclosures of fraud to corporate general counsel. *See Van Asdale v. Int'l Game Tech.*, 557 F.3d 989, 995-96 (9th Cir. 2009). The employer argued that the former in-house counsel's claims must be dismissed because they could not be proven without the disclosure of attorney-client privileged information. *Id.* at 995. The Ninth Circuit reasoned:

> [The plaintiffs] allege that they raised claims of shareholder fraud at [a] meeting with [general counsel] and that they were terminated in retaliation for these allegations. There is no reason why the district court cannot limit any testimony regarding this meeting to these alleged disclosures, while avoiding testimony regarding any litigation-related discussions that also took place. To the extent this suit might nonetheless implicate confidentially-related concerns, . . . the appropriate remedy is for the district court to use the many equitable measures at its disposal to minimize the possibility of harmful disclosures, not to dismiss the suit altogether.

*Id.* at 995-96 (quotation and citation omitted). Similarly, striking paragraphs 17 and 19-26 of Jett's complaint likely would lead to the dismissal of her claims because those paragraphs contain the entirety of Jett's allegedly protected activity. The Court is not persuaded that the principles underlying the attorney-client privilege warrant this relief, "particularly when such communications already have been disclosed to both parties in this action." *Becker*, 2013 WL 2178122, at *3. Although "the primary purpose of the attorney-client privilege is to facilitate the honest and open exchange of information between the

client and counsel," in the corporate context an employee also must "be able to provide full, frank, and honest communication . . . without the fear or possibility of retaliation without recourse." *Id.*

Paragraph 30 of the complaint alleges that, during a one-on-one meeting between Jett and her manager, Jett's manager "once again complained about Jett's 'excessive' use of leave." (Doc. 1 at 4.) The County asks the Court to strike the words "once again," but nothing about these words reflects a communication between attorney and client. Rather, the "once again" language refers to paragraph 15 of the complaint, which is the first time Jett claims her supervisor "chastised" her "for taking too much leave." (*Id.* at 3.) The County does not contend that paragraph 15 is privileged (nor could it), and if Jett may disclose that her manager chastised her for taking too much leave, she may disclose that her manager did so "once again."

Paragraphs 18, 27, and 28 of the complaint are a closer call. Paragraphs 18 and 27 describe Jett asking the County in-house counsel for "clarity" on the interpretation of certain policies and counsel's response. Similarly, paragraph 28 describes the County in-house counsel's plans for obtaining further information about Jett's reports. These paragraphs appear to reflect communications between a county employee and a county attorney for the purpose of obtaining legal advice, but the Court is reluctant to strike these paragraphs at this early stage without more context. For example, if these communications become a lynch pin of Jett's retaliation claims, the same concerns underlying the *Van Asdale* decision might counsel against applying the attorney-client privilege. Moreover, because these communications already have been disclosed to both sides in this litigation, the parties likely can mitigate potential harm by agreeing to a protective order for purposes of discovery. Accordingly, the Court will not strike these paragraphs, but out of caution will seal Jett's complaint and direct Jett to publicly file a version that redacts paragraphs 18, 27, and 28. Disputes concerning the admissibility of the information contained in these paragraphs can be resolved as they arise, preferably with more context for the role (if any) these allegations play in Jett's retaliation claims.

**IT IS ORDERED** that the County's motion to strike (Doc. 11) is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall seal Jett's complaint (Doc. 1). By no later than **December 2, 2019**, Jett shall publicly file a version of her complaint that redacts paragraphs 18, 27, and 28.

Dated this 25th day of November, 2019.

Douglas L. Rayes
United States District Judge