**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dawn Jett, | No. CV-19-02735-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| County of Maricopa, et al., | |
| Defendant. | |

Pending before the Court is Defendant County of Maricopa's (the "County") motion for summary judgment, which is fully briefed. (Docs. 61, 62, 65.) The Court grants the motion for the following reasons.

**I. Background**

Plaintiff Dawn Jett ("Jett") worked as a Group Human Resources Manager from April 23, 2018, until she was terminated by her supervisor Jan Plank ("Plank") on August 10, 2018. (Doc. 1 at 2, 4; Doc. 61-6 ¶ 6.) Less than three months before that termination, Jett had taken a floating holiday and two sick days. (Doc. 62-1 at 6-7.) She later planned to take a several-day vacation in September, which Plank had unofficially approved before hiring her. (*Id.* at 3.)

However, on August 8, 2018, Plank told Jett that she had not accrued enough vacation time to cover her planned vacation. (Doc. 61-1 at 16.) Jett testified that Plank criticized her during that conversation for "taking all this other time as well." (Doc. 62-1

at 5.)

The next day, Jett called Assistant County Attorney Christina Hamilton ("Hamilton") and posed a hypothetical: "if I had a department director who was making an exempt employee take leave even though they worked over their 40 hours, wouldn't that be in violation of the law and policy?" (*Id.* at 15.) Jett made it clear to Hamilton that by "law," she meant the Fair Labor Standards Act ("FLSA"). Though she did not identify Arizona laws in that conversation, she testified at deposition that she meant those laws as well. (*Id.* at 16.) Before the call ended, Jett revealed that she was the "exempt employee" in the hypothetical. (*Id.* at 9.) Hamilton declined to offer any advice and ended the call. (Doc. 61-2 at 14-15.)

Immediately after hanging up with Jett, Hamilton spoke with her boss, Brandon Newton ("Newton"), and relayed her concerns about the "severity of the dishonesty" Jett displayed in the call. (*Id.* 19-20.) Jett and Plank also spoke later that day, before Plank learned of the phone call with Hamilton. (Doc. 62-1 at 45.) At that meeting, Plank criticized Jett for taking leave, and Jett retorted, "I had never had anyone approve my leave and then chastised me for taking it." (*Id.* at 8.) Plank observed that Jett was "earning and burning," which Jett understood to mean "you earn a sick day, you take a sick day." (*Id.* at 11.) Jett did not dispute this characterization.

The next day, August 10, 2018, Newton told Plank that Jett had approached Hamilton with a question about a hypothetical employee and, at the last minute, revealed that the requested "legal advice was actually for her." (Doc. 61-1 at 22-23.) By his assessment, Jett had "been dishonest" and was "no longer trustworthy." (*Id.* at 23.) The County Attorney's Office, he concluded, would no longer work with her. (*Id.* at 23, 27-28.)

Over the next two hours, Plank consulted with the County Manager and Assistant County Manager and then terminated Jett over email:

> Dear Dawn –
>
> I just received a call from the County Attorney's office indicating that you had contacted them for legal advice and

- 2 -

> approached them, on your day off, as if you were inquiring about an employee in one of your departments when in reality you were seeking legal advice to use against me and the county. This is highly unethical and dishonest and, in light of the other issues we have discussed recently, I am separating you from Maricopa County effective today.

(*Id.* at 25; Doc. 62-1 at 56.) Plank repeated this rationale in her deposition testimony. (Doc. 61-1 at 25.) Plank did not interview Jett before terminating her. (*Id.* at 52.)

Jett filed a complaint against the County, alleging retaliatory discharge under the FLSA, Arizona Employment Protection Act ("AEPA"), and Arizona paid sick leave law ("PSL"). (Doc. 1.) The County now moves for summary judgment on all claims.[1] (Doc. 61.)

## II. Standard

Summary judgment is appropriate when there is no genuine dispute as to any material fact and, viewing those facts in a light most favorable to the nonmoving party, the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case, and a dispute is genuine if a reasonable jury could find for the nonmoving party based on the competing evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). Summary judgment may also be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The burden then shifts to the non-movant to establish the existence of a genuine and

---

[1] The Court denies the County's request for oral argument because the issues are adequately briefed, and oral argument will not help the Court resolve the motion. *See* Fed. R. Civ. P. 78(b); LRCiv. 7.2(f); *Lake at Las Vegas Investors Grp., Inc. v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

material factual dispute. *Id*. at 324. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts[,]" and instead "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal quotation and citation omitted).

**III. Analysis**

    **A. Retaliation Claims I and II**

Under the FLSA and the AEPA, an employer may not retaliate against an employee for complaining about certain violations of employment law. *See* 29 U.S.C. § 215(a)(3); A.R.S. § 23-1501(A)(3)(c)(ii). Courts analyze both FLSA and AEPA claims under the *McDonnell Douglas* burden-shifting framework. *See Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1066 (9th Cir. 2003) (FLSA); *Schulz v. Sandweg & Ager, P.C.*, No. CV-19-05541-PHX-MHB, 2021 WL 2589735, at *7 (D. Ariz. Apr. 19, 2021) (AEPA). First, the plaintiff must establish a prima facie case of retaliation. *Stegall*, 350 F.3d at 1066. If she does, the burden shifts to the employer to articulate a legitimate, nonretaliatory reason for the adverse employment action. *Id.* If the employer does so, the burden passes back to the plaintiff to show that the employer's proffered reason was mere pretext. *Id.*

        **1. Prima Facie Case**

The FLSA and AEPA set out different requirements for the prima facie case, and the Court addresses each in turn.

            **a. FLSA**

To establish a prima facie case of retaliation under the FLSA, a plaintiff must show (1) the plaintiff engaged in FLSA-protected conduct, or the employer erroneously believed the plaintiff engaged in such conduct; (2) the plaintiff suffered an adverse employment action; and (3) there was a causal link between the protected conduct and the adverse action. *Hashimoto v. Dalton*, 118 F.3d 671, 679 (9th Cir. 1997).

Defendant challenges only the causal link element. (Doc. 61 at 8.) But causation is presumptively established when an adverse employment decision follows on the heels of

an employee engaging in protected conduct.[2] *Passantino v. Johnson & Johnson Consumer Prod., Inc.*, 212 F.3d 493, 507 (9th Cir. 2000); *see also Miller v. Fairchild Industries, Inc.*, 885 F.2d 498, 505 (9th Cir. 1989) (holding that discharges 42 and 59 days after EEOC hearings were sufficient to establish a prima facie case of causation). It is undisputed that Plank terminated Jett one day after she raised questions, so Jett's prima facie case of causation is established.

### b. AEPA

Among other things, a prima facie case under the AEPA requires a plaintiff to show that she complained about a violation of an Arizona law that lacks its own remedial scheme. A.R.S. § 23-1501(A)(3)(b). Plaintiff testified that she complained about violations of wage and paid sick leave rights, which, she concedes, fall under A.R.S. § 23-352 and -374, respectively. (Doc. 62 at 8, 9.) But both laws have their own remedial schemes. *See* A.R.S. § 23-555, -556 (wages); A.R.S. § 23-364 (paid sick leave). Jett cannot make out a prima facie case of retaliation under A.R.S. § 23-1501(A)(3)(b), and so her AEPA claim fails on this ground. Nevertheless, the Court continues through the rest of the *McDonnell Douglas* framework for her AEPA claim.

### 2. Legitimate, Nonretaliatory Reason

The burden now shifts to the County to articulate a legitimate, nonretaliatory reason for terminating Jett. The County presented undisputed evidence that Newton informed Plank that the County Attorney's Office would no longer work with Jett because of her dishonest conduct with Hamilton. (Doc. 62-1 at 46-47.) Plank corroborated Newton's story in her deposition testimony and explained that she fired Jett for her dishonest conduct. (Doc. 61-1 at 23-24, 28.) And the termination email gave the same reason. (Doc. 62-1 at 56.) This satisfies the County's burden.

---

[2] The County argues that *Nassar*'s "but-for" causation standard applies. Not so. *Nassar* concerned the causation standard to establish a prima facie case of retaliation for status-based discrimination under § 2000e-3(a). *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013). The Ninth Circuit declined to import that standard to FLSA retaliation actions, preferring to instead apply the "motivating factor" test. *Avila v. Los Angeles Police Dep't*, 758 F.3d 1096, 1101 n.3 (9th Cir. 2014); *id.* at 1108 n.3 (Vinson, J., dissenting).

### 3. Pretext

The burden shuffles back to Jett to prove that a reasonable jury could find that the County's reason was mere pretext. She may carry her burden by showing "such weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Dep't of Fair Emp't & Housing v. Lucent Techs., Inc.*, 642 F.3d 728, 746 (9th Cir. 2011). It is not enough just to "show that the employer's decision was wrong, mistaken, or unwise." *Id.* (internal quotation and citation omitted). The plaintiff's evidence at this point "must be both specific and substantial to overcome the legitimate reasons put forth by" the employer. *Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 659 (9th Cir. 2002).

Jett advances her pretext argument on several fronts. First, she argues that the termination letter shows pretext because it did not mention that the County Attorney's Office did not want to work with her. (Doc. 62 at 6.) But the letter sets out the County's legitimate reason: Jett was terminated for her "highly unethical and dishonest" behavior on the call with Hamilton, presenting a question about a hypothetical employee when, in reality, she was that employee. (Doc. 62-1.) The Court does not see, nor does Jett explain, how not mentioning the working relationship with the County Attorney's Office somehow weakens this legitimate basis for termination. *See, e.g.*, *Debord v. Hercy Health Sys. of Kan., Inc.*, 737 F.3d 642, 657 (10th Cir. 2013) ("[D]ishonesty is a valid ground for terminating an employee.").

Second, Jett argues that Plank failed to interview her or Hamilton before terminating her. (Doc. 62 at 6.) She infers from this failure that Plank harbored a retaliatory motive because "she was angry because she believed Jett's complaint was about her." (Doc. 62 at 6.) Jett's subjective beliefs, however, are insufficient to show pretext, and no other facts suggest that Plank fired Jett for a retaliatory reason.

Third, Jett argues that working with the County Attorney's Office is not an essential duty because she had directly interacted with employees in the County Attorney's Office

- 6 -

only three times over the less-than-four months she'd been working there. (Doc. 62 at 6-7.) But she did work with the County Attorney's Office. (*Id.* at 7.) The fact that she had limited interaction with employees in the County Attorney's Office during the short period she had worked in the Department doesn't change that. Relatedly, Jett argues that Plank could have redistributed the duties related to the County Attorney's Office. (*Id.*) This Court, however, "does not sit as a super human resources office" and will not dictate discretionary resource-allocation decisions. *Strickland v. Seattle Cent. Coll.*, No. C18-1073JLR, 2019 WL 7370338, at *9 (W.D. Wash. Dec. 31, 2019) (quoting *Martin v. Gen. Elec. Co.*, 891 F. Supp. 1052, 1057 (E.D. Pa. 1995)).

Lastly, Jett argues that she in fact did not behave dishonestly on the call with Hamilton. (Doc. 62 at 5.) This belies her own testimony about posing a hypothetical question to Hamilton about "an exempt employee": "I said if I had a department director who was making an exempt employee take leave even though they worked over their 40 hours, wouldn't that be in violation of the law and policy?" (Doc. 62-1 at 15.) Only later did she reveal that she was the employee in the hypothetical. (Doc. 61-2 at 9.) Regardless of the specific content of the call, Jett's own testimony shows that she lacked candor on the call. More importantly, however, what matters is not whether the County was right or wrong about Jett's conduct—all that matters is that the County believed Jett behaved dishonestly and fired her for that reason, rather than for an unlawful retaliatory reason. Jett's final argument fails to establish pretext.

Jett fails to provide substantial and specific evidence of pretext, and thus the County is entitled to summary judgment on the FLSA and AEPA retaliation claims.

**B. Arizona Fair Wages and Healthy Families Act**

Where, as here, an employer discharges an employee within 90 days of the employee using or complaining about paid sick leave, the termination is presumptively retaliatory. A.R.S. § 23-364(B). An employer may rebut this presumption only by presenting "clear and convincing" evidence that the employee was terminated for legitimate reasons. *Id.* "Clear and convincing" means "the thing to be proved is highly

probable or reasonably certain." *Kent K. v. Bobby M.*, 110 P.3d 1013, 1018-19 (2005). Courts have found that an employer satisfies its burden by supplying contemporaneous documentary evidence—usually emails—and deposition testimony. *See Corbin v. Ariz. City Fire Dist.*, No. CV-19-05716-PHX-SPL, 2021 WL 1662597, at *4 (D. Ariz. Apr. 28, 2021); *Hoeveler v. Arizona Assocs. in Dermatology & Cosm. Surgery LLC*, No. 1 CA-CV 20-0120, 2021 WL 56402 (Ariz. Ct. App. Jan. 7, 2021).

Jett argues she was terminated for using paid sick leave and complaining about paid sick leave to Hamilton. Because these events happened within 90 days of the termination, it is presumptively retaliatory. But, as noted above, the County provided deposition testimony from Newton (who told Plank that Jett had acted dishonestly) and Plank (who explained she fired Jett for dishonesty) and the termination email (which gave dishonest conduct as the cause for discharge). (Doc. 61-1 at 23-24, 28; Doc. 62-1 at 46-47, 56.) And Jett's own testimony shows that she was not forthright in the call with Hamilton. (Doc. 62-1 at 15.) Such evidence makes it "reasonably certain" that the County discharged Jett for legitimate reasons.

**IV. Conclusion**

For the foregoing reasons, the County is entitled to summary judgment on all claims.

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc. 61) is **GRANTED**. The clerk of the Court is directed to enter judgment accordingly and terminate this case.

Dated this 3rd day of February, 2022.

Douglas L. Rayes
United States District Judge

- 8 -